Arguments not to exceed 15 minutes per side. Mr. Keeley for the appellant. Counsel, you may approach the podium and proceed. May it please the court, my name is Michael Keeley. I'm with Strasburg and Price in Dallas, Texas. I represent the appellant, Everest National Insurance Company. I'd like to reserve 2 minutes for rebuttal. This case involves a claim by the Bank of Ann Arbor to recover monies it lost when it wire transferred money from a customer's home equity line of credit to a bank in Korea. It turns out that the individual who sent the wire transfer request form to the bank was an imposter, a fraudster. The bank attempted to recover the money from Korea but was unable to do so. It did what it was required to do and refunded the money to its customer. After that, the bank submitted a claim to my client under the terms of a standard form financial institution bond that had been issued to the bank. The proof of loss that the bank submitted to Everest on the front page had 7 boxes that the bank had checked to designate which insuring agreement of the bond the bank was making its claim under. It checked the box marked other, home equity line of credit fraud, electronic wire transfer fraud. It did not check the box under which the bank now sues in this lawsuit under insuring agreement D of the bond. There is a rider to the bond that was issued to the bank that actually provides coverage for the exact loss that the bank incurred. It's for electronic wire fraud. That rider includes a very important risk sharing arrangement. It requires the bank to enter into an agreement with its customer that has three requirements. One, the customer authorizes wire transfers to be made by fax. Two, it identifies the persons on behalf of the customer that are authorized to initiate wire transfers by fraud. And number three, it requires a verification mechanism. Everest denied the bank's claim because the bank did not enter into such an agreement with its customer. Everest also denied the claim because of a longstanding loan exclusion in the bond, a standard loan exclusion, which excludes coverage for any loss resulting directly or indirectly from a loan, whether procured in good faith or through fraud or trickery. There are two main issues on appeal. All right. You proceed and then I'll ask my question. Sure. Two main issues on appeal, Your Honors. One, whether Judge Cook's summary judgment should be reversed because it incorrectly granted coverage under insuring agreement E when insuring agreement D requires that the wire instruction be an original. Here, it was a fax, clearly not an original. And number two, the monies that were lost clearly resulted from a loan or an extension of credit by the bank. That's the question. I mean, the loss here was a matter of fraud. It wasn't an extension of credit. I understand why an extension of credit wouldn't be covered. If the bank doesn't do due diligence in extending credit, they ought to suffer their loss, and certainly you couldn't insure that kind of situation. No banks would ever go under if their losses of that nature could be covered by insurance. So I don't understand how it could possibly be a loss under sub E. All right. And I'm not sure I have information about this other basis. It was a rider. Is that what you're? Well, the initial claim was made under a rider. When the bank sued, it did not sue under the rider. It switched its request for coverage to insuring agreement D, which provides potential coverage for losses from amounts paid on forged documents, but only if the document is an original. The document here was not an original. It was a fax. So, Judge Daugherty, as to your question regarding the loan exclusion, the loan exclusion has been in this standard form bond dating back for at least 50 years. It started out as a narrow exclusion, excluding coverage for loss resulting from a loan. Over time, banks and other insured entities argued exactly the point you're making, that the loan exclusion is intended to be narrow, applying only to normal loans. The insurance industry, working in connection with the American Bankers Association, because this is a negotiated bond as the bank recognizes in its brief, expanded the loan exclusion. If you look at it today, it is much broader. It extends not only to regular loans, but any extension of credit. So it extends to, for instance, NSF checks that aren't normal loans, but it also extends to any situation that involves the bank as a lender or a creditor, and to any credit situation. The cases across the country are unanimous that it extends not only to normal loans, but also to situations where banks extend credit under the apprehension that they are lending money to borrowers. But only when that borrower is the actual customer, correct? No, not at all, Your Honor. A loan, a standard loan, requires money being lent to a customer. An extension of credit does not necessarily require that there be an actual borrower. There are a number of cases, a number we've cited to this court, which indicate there is no coverage where the borrower is a fraudster. That's the very point. Yes, and I think that's my concern about your brief. There are a number of statements in the brief about John Doe, who is the customer. You know, you say John Doe did not repay money, that he tricked the bank into advancing under a home equity loan line of credit. And referring to the loans, the nefariousness of the loans, you say exactly how John Doe obtained funds under the home equity line of credit. My problem is I don't think those statements are true. Did this customer obtain by trickery the money? No, the actual customer did not, but that is not what is— The customer is John Doe, right? No, the customer of the bank is—excuse me, Your Honor—the customer is John Doe. Right. The wire request was made by a fraudster. Right. The bank acted under the apprehension that it was lending money. It took money from a home equity line of credit. It believed it was sending money to CREA at the request of a customer. At that point, under this policy, under the loan exclusion, the risk turned to the bank. The bank has agreed that when it makes a loan or thinks it is making a loan, the risk of loss falls squarely upon it. I understood that the cases that you cited was that when the bank is choosing to extend credit or to make a loan, the bank bears the burden of the risk because the bank is the one who is analyzing the viability of that customer. But that's not what happens in a forgery case, is it? Please give me the specific sites to the cases that you say do not entail improper extension of credit to a customer but entail some third-party forgery or fraud being covered. Liberty Savings Bank, Southern District of Ohio, 1990, cited at page 31 of my brief, makes it clear that poor credit decisions is not what the loan exclusion is limited to. Maryland Casady v. State Bank, Fifth Circuit decision, page 31 and 38 of my brief. And both of those involve fraud by third parties, not the customer. Both of those made it clear that poor credit decisions was not what the loan exclusion was limited to. Did they involve third parties or did they involve improper activity by the customer? Those did involve improper activities by the customers. First insurance funding at pages 33 through 35 of the brief, associated community bank at pages 34 through 35, involved non-banking situations involving similar type exclusions where the persons that the insured entity dealt with in first insurance funding, a premium finance company, issued loans to a fraudster broker due to the fraud of that broker. The exclusion there excluded coverage for any loss resulting directly or indirectly from a broker. The insured argued that the fraudster was not a true broker. He was a fraudster. And the court said it doesn't matter. But he was still a third party, right? He was a third party. He was not the borrower. He was bringing borrowers to the bank. The exclusion was for losses caused by a broker. The insured says he is not a broker. He is a fraudster. Same thing the bank is arguing here. But I'm trying to get this customer third party issue straight. But he was the one who engaged the relationship with the bank. And then he proved not to be what he said. Necessarily. Almost always under insuring agreement D, as opposed to an employee dishonesty case or a loan case under E, almost always under D where there's wire transfer fraud, by its very nature it's going to be a third party. The exclusion doesn't limit this to traditional loans where you have a borrower. It is not that narrow. It says it excludes coverage for any loss resulting directly or indirectly from the bank acting as a creditor. And, again, I go back to first insurance funding and associated community bank. The purpose is this is a risk-sharing arrangement. E is meant to put on the bank the burden that any time it enters into or believes it is entering into a loan or a credit relationship, it takes extra precautions. Here it could have avoided this loss, easily could have avoided this loss, if it had done what it was required to do. It didn't. What it was required to do was to match the signature to the signature in its records, to call the customer and ask if the customer had requested that transfer. And it, in fact, did both of those, correct? Under its own guidelines, that's what it did. And in today's world, that's not nearly enough. Cybercrime hits the newspapers once a week. This very fraud is happening all over the country. It's not intended to be covered by this policy. This policy is basically a paper policy that was originally promulgated in a paper world. The insurance industry and the American Bankers Association are working together to solve the problem of cybercrimes. There is a rider to this policy that provides coverage for this loss, but it requires the bank to do more than it did here. It requires it to take on some other very simple obligations and to have a verification procedure with its customer pursuant to a written agreement. It had none, and that's why the bank dropped that claim under its rider, because it knows it has no coverage. There's a travesty of judgment if this court does not reconsider the original issue. The claim in this case was pursued under Insuring Agreement D. Insuring Agreement D is an older insuring agreement. It doesn't apply to cybercrime, and that's why it requires if there's coverage, you have an original wire transfer request form. Judge Cook, in deciding summary judgment, conflated two requirements of Insuring Agreement D, the original document requirement and the authorized signature requirement. If you look at his opinion at pages 4 to 5, you will see he conflated those two and got the issue completely wrong. He said there's coverage because there's an original signature. That's not what Insuring Agreement D requires. It requires an authorized signature and an original document, which is not present here. There's very clearly no coverage. Under the four-part test, this court applies in determining whether to refuse to issue or to consider an issue that was not decided below. The main issue is whether there's going to be a travesty of justice. Your Honor, there will be a great travesty of justice here. I wanted to ask you something, but I didn't want to interrupt unless you're done there. Just to see if I understand your position on all this, the bond covers this fraud. That's not what you're disputing is that the issue as you're presenting it is whether the exception applies, the exception being for loan losses. Is that right? There's no coverage in the first instance, Your Honor, under Insuring Agreement D. Insuring Agreement D provides coverage for wire transfer fraud if the wire transfer document, the withdrawal order, was an original. Here we had a fax. A fax is not an original. The bond defines original as the arch type or first rendering. So there's no coverage in the first instance. But that issue of the original instrument, you only raised that in your motion for reconsideration. There's an issue, there's a question as to whether that's even before us. It is, Your Honor, and there's three reasons this Court should reach the issue. One, in Carolina Casualty, decided by another panel of this Court in January, Justice Gilman said, waiver does not apply if the trial judge considered the issue. So even though my client Or does it say if the trial judge considered the issue or if the trial judge based his decision on the issue? I think it was both, and that's exactly what happened here. Again, if you look at pages 4 to 5 of Judge Cook's opinion, he went I'm just struggling to understand because the argument was not made to him. And in passing, he notes an original signature, but that was not the basis of his decision, was it? It absolutely was, Your Honor. In order to prove breach of contract, the judge looked at the insuring agreement and said, what are the requirements of the insuring agreement? At page 4, he did that. He said, one, he set forth the insuring agreement. There's a requirement of an original. Second, there's a requirement of an authorized signature. At the top of page 5, he conflated the two. He conflated them, and he thought all that was needed was an original signature. That's not what's required. What's required is an original document. So yes, absolutely, Judge Cook considered the issue. He decided it under the authority of Carolina Casualty. Because it was considered and clearly decided by Judge Cook, this court should reach the issue. But it should also reach it because it will be a travesty of justice if this court does not. This is a critical question throughout the country right now. Counselor, I know you read Lysol, but I just have one last question here. This loan loss exclusion, you've been speaking of that as a credit transaction, that this is something that arises in connection with the extension of credit, if I'm understanding you correctly. But what occurred here was a drawdown on an existing line of credit, so that the extension of credit would have occurred not when this money was drawn down that was the subject of the fraud, but way back previously when the line of credit was created. So this, if you look at it that way, this was not a credit transaction. This man is drawing down, would have been drawing down on a line of credit that had been preexisting from a time the credit was previously extended when the line of credit was created. So was this, using that reasoning, was this really a credit transaction the way you've been describing it? Absolutely, Your Honor. The exclusion excludes coverage for loss resulting directly or indirectly from any loan or extension of credit. But there's not language in there that says all that. No, it does. The exclusion clearly says, excludes coverage for loss caused directly or indirectly from a loan or any extension of credit, whether procured in good faith or through trick, artifice, fraud, or false pretense. The line of credit was approved. The money was not drawn down on it. There's no loan. There's no actual drawing on the line until the money goes out the door. Under Corsicana Bank by the U.S. Supreme Court in 1902, loss doesn't occur until money leaves the bank. Here, there was an approval of a loan, but it wasn't drawn upon. At the very least, this loss results indirectly from a loan. All right. I think we have your position in hand. Thank you. Please support Bruce Wallace from Ann Arbor with Susan Connell, my partner, on the brief. You know, as a starting proposition, just the plain language rule looking at this policy, it's a policy that it's forgery insurance. We purchased forgery insurance, and it's pretty plain that that's what occurred here. And only if you kind of wander off into the world of whether their language about original and about original but original can be, that requirement can be met by a reproduced signature. Is there perhaps some ambiguity if we even reach that issue? But under the plain language of this policy, there are two key things about it. It insured against forgery, which is what occurred. It did not insure against loan losses. We didn't make a loan here. Our customer was not involved in this transaction. We've submitted language in our brief of how our customer is defined. Our customer is the party to whom we, Judge Clay, extend credit. We extended credit to a customer in Ann Arbor. He was a very good credit, always a good credit. He put up his house as collateral. Everything about the extension of credit was sound. But then a forgery came in, did what we've understood occurred, and extracted money. The bank, in good faith, paid off on the loss immediately to the customer and went to its forgery insurance, made a timely application. I will digress just for a second.  The only box that was applicable was Other because the box that counsel refers to that we did not check says forgery of a negotiable instrument. If the court has any doubt about that, please look at the exhibit. We didn't check that because there's no negotiable instrument involved here. We checked Other and explained exactly what happened in great detail, including submitting the police report. The proposition raised really for the first time in their reply brief in this court that we didn't let them know we were under the forgery provision. Ensuring Agreement D is pure nonsense. I mean, from the very beginning, even in their own brief in this court, they say both parties agreed this loss occurred out of a forgery. There's never been any mystery about that. But you really don't have to reach the argument about original and whether a reproduced signature, which we feel modified the original language, the definition of original. You don't have to reach that because in about five different legally recognized ways, the insurance company waived this argument altogether. First of all, and they've never responded to this point, there is absolute Michigan black letter law recognized repeatedly by this court in, for example, Jones v. Jackson National Insurance, the Wycliffe case, they're all cited, that says the insurance company has to, in its denial letter, set forth all its grounds for denial. And if it doesn't, those exclusions, those arguments are lost. And there's not a hint in their denial letter that we somehow failed on the requirement for an original. They didn't raise that in their denial letter, which is really end of issue. They did not raise it again in their answer, in their affirmative defenses, in two summary disposition briefs and including summary judgment briefs, including a reply brief that we stipulated they could write a longer reply brief. They never uttered this word. So they waived it throughout the pleadings, and we have rules about pleadings. You have to raise these things so we can litigate them. This is an issue that never got litigated in the district court because they never raised it. And the final principle is that Rule 59E says, as a matter of the federal rules, you can't bring up the issue at the end in a motion for reconsideration. So on every possible waiver argument, they fail, and they make no explanation of why that failure should now be excused by this court. The best argument they have, or the argument that they're making, is that this will be a travesty of justice. Of course, you can imagine how we feel about the word travesty in this instance, having been litigating our forgery insurance policy now for two or three years and ending up in front of this court. But that principle that might allow this court to excuse their pleading doesn't allow this court to excuse their failure to raise it in the denial letter. And that's substantive Michigan insurance law, which this court consistently applies. How do you respond to your opposing counsel's argument that he has cases such as this? I think we settled on this first insurance that show that it does not have to be the customer or in the customer's activity or based on the customer's account that would make the exclusion apply. I think all of those cases involve a person or entity with whom the bank had a relationship. Relationship, yeah. Every one of those cases. So maybe they're not strictly a customer. Maybe it was a broker case, but they involve the original relationship. And that makes sense. I mean, it could make sense if the facts fell in the right place. But no case has taken a forgery deception plot like this and called it a loan. Because, again, plain language, we know that money wasn't loaned here. It wasn't loaned to our customer. Let me ask you this. I'm looking now at your opposing counsel's brief, and it does say that his client issued an insurance policy to the bank that covered losses resulting from certain forgeries so long as, among other things, the forged instrument that the bank relied on in incurring a loss was an original, and this was a fax. Is there any response you have to that claim? Well, my first response is that they completely waived that argument throughout the lower court proceedings. Okay, that's my first. Just to be clear about that. It's being raised for the first time on appeal, is that? Well, for the first time in the motion for reconsideration. But, again, they had to raise it in the first denial letter or they lose it. That's Michigan law. And just for a moment. What is the law on what constitutes an original these days? Well, here's the thing about that because, I mean, if we're discussing that, they define it. Original is a defined term in the policy, and it's a modified term. So there are two aspects to it. One is they modify it by telling us that a reproduced signature qualifies as an original signature. That's right in the language of insuring agreement D, and that's how I read it about 50 times before I saw this last brief that took us on about that. So that language is modified by a provision that allows recognition of reproduced signatures, number one. Number two, this defined term, interestingly, instead of saying an original is not a copy or something that you might find in a dictionary, and I've looked up all the terms, it says an original is a first rendering or an archetype. So, I mean, I've looked up first rendering, and I invite the court to look it up. It's not in dictionaries, of course, because it's two words. If you look it up online and try to find out what a first rendering is, it's nothing short of – It's confusing gobbledygook. First rendering is used with respect to paintings, ancient paintings. It's used with respect to certain kinds of three-dimensional computer things. I guess we're getting farther into this than we need to. I just wondered what the law about the use of a faxed document, if anything has developed around that. Well, there's law that says, and this is the Missouri Bank case, that if you want to exclude a fax as not being an original, then you should say we exclude faxes. That's what the holding of that case is. So that's as good a law as you're going to get on this subject, I think. A fax is not an electronic signature. It's not a digital signature. So I think we win under that case law. They can't effectively distinguish it. Well, let me ask you another question. In the paragraph below the one that I just read from, there's this statement. Both parties agree that the bank's loss occurred because someone, John Doe, faxed to the bank a forged request for a draw on an actual bank customer's line of credit. That's, I gather, correct. Acting upon that forged request, the bank wired loan funds to John Doe, believing him to be the real bank customer. I take it that's an incorrect statement. They wired the money to the bank in Korea, didn't they? Correct, to the bank in Korea. Yeah, I don't think that's disputed. Am I out of time? It looks like I am. No, your green light's still on. Okay, great. So if we reach the question of original, which they haven't raised until way too late in the litigation, they are clearly subject to the rule that ambiguities in a policy, if you can call it an ambiguity at best, need to be construed against the insurance company. I say that the language of insuring agreement D pretty effectively tells us that reproduced signatures are valid and should be treated the same as original signatures. In their reply brief, they raise a new argument, which is that we didn't meet, as I understand it, meet our burden of going forward to prove entitlement to summary judgment. And I don't really understand this argument, but they're either saying because we checked the wrong box or didn't use the term insuring agreement D, and, frankly, returning to the law about the relative obligations of the insured and the insurance companies, all our obligation is to give them notice of what occurred. Insured parties aren't required by any case law to pick through the policy and figure out all of the language points, arguments, exclusions, and deal with them in a notice letter. It's supposed to give notice of the facts. We give notice of forgery. So, A, they're saying we didn't come forward and establish that, and that's just wrong. That's in all the exhibits and our pleadings. Number two, the standard for summary judgment is whether on the undisputed facts you can make a clear ruling, and the facts were undisputed. So we submitted these facts. Nobody was arguing any factual issue that needed to be resolved. And thirdly, this argument appeared, this is the latest one of all, it appeared in the reply brief in this court no time earlier. I think that you kind of devolve into Orwellian language parsing in some of these insurance cases, but that's particularly true here. And if they had raised this much earlier, and if we had litigated the significance of facts, and the point about the facts is that if a different document, one that in a wire transfer context, ridiculously a wire transfer, let's say you're overseas and you want to do a wire transfer. You contact your bank. You're not in a position to mail in an authorization or walk it in. That's what wire transfers are for. So this doesn't correspond to the wire transfer world at all. But if that had happened, who's to say what that document, probably we would have taken that document, compared it to the customer's signature. It would have resembled the customer's signature as the facts reproduced signature did. And this is sort of like saying if you send in your notice to the insurance company by first class mail instead of FedEx or in reverse. They say first class mail, and you send in FedEx, that because that language, you've digressed from that exact language, and your insurance coverage is gone. So there's no suggestion, and logic tells us that this whole point that they've raised wouldn't have made any difference at all in this case. If that goes to anything, it goes to whether this would be a travesty of justice to require the insurance company to pay $196,000 on forgery insurance after years of our paying premiums to them for this insurance. Just out of curiosity, Mr. Wallace, did they catch the forger? No. This is a scan that's – there is some significance to this case beyond what we're talking about here today because this – you might have noticed in the Missouri bank case, $196,000 got sent to a bank in Korea, the same bank. So this is a scam that's being run and has been run much more broadly. To my knowledge, nobody's been caught. Their brief suggests that what we did was we demanded repayment from the forger and didn't get it. I think they tried to put it in terms of we went to the real borrower here and he rejected our claim for repayment or something to that effect. We never found this guy or these people. I don't want to belabor the point, but was the bank in Korea a legitimate bank, for example? I think so. Okay. Yeah, I think so. Okay, thank you very much. Thank you. Your Honors, my firm and I were retained after summary judgment was issued not to argue about the amount of this loss. We were retained because we legitimately believe that there will be a miscarriage of justice if this court does not consider the original issue. We didn't address it in a denial letter because insuring agreement D was not at issue back then. Judge Cook, in this case, concluded that there was coverage under insuring agreement D because there was an original signature. It's not what the policy requires. How could the original exhibit, how could the agreement D not be at issue if that's what the court looked at and made its decision on? Your Honor, it's at issue because it's the plainest burden of proof to prove breach of contract. In order to do that, they have to prove that the conditions of the insuring agreement are met, that the bank extended. So they were arguing for coverage. Absolutely. Okay, so it was before the court. Absolutely. It had to be before the court, and the court got it wrong. If you look at insuring agreement D, it clearly requires an original document. That's not what we had here. Briefly, this will be a miscarriage of justice. There are 8,000 federally insured banks in this country. Everyone is obligated to have a financial institution bond. Most of them have the standard form at issue in this case. I chaired a program in Boston on cybercrime this fall. Already, lawyers were arguing, based upon Judge Cook's decision, that HELOC wire transfer fraud scams were covered under insuring agreement D because faxes are originals. That's what that case stands for. And if this court does not consider the issue, it will be a travesty of justice. Under the case I mentioned to you in January, the Carolina case that Judge Gilman decided, because Judge Cook at the trial court decided the issue, this court should reach the issue. Under this court's four-part test. If this court says that the issue is waived, how is this court making a ruling that is in fact an original? I'm sorry? Why can't this court resolve it without reaching that issue? If this court says the claim that this is not an original was waived, we do not address that claim. That's right. And then there is no opinion that says, oh, an original is a fax, or this simply says that issue was waived. Judge Cook's opinion. You're back at square one, aren't you? Unfortunately, that's not the way litigation works in this country. The Flagstar case out of, I think, this circuit about six years ago, the district court case continues to be cited. That happens all over the country. And so I urge this court to please at least consider what the test is. Please look at Carolina casualty. You can consider the original issue, and it is an easy issue to decide, and you should consider it. Thank you very much. Thank you, and case is submitted.